|    |                                                        |
|----|--------------------------------------------------------|
| 1  | FRANZ SKRYANZ                                          |
| 2  | A.   Totally unrelated.                                |
| 3  | Q.   How long did you speak to                         |
| 4  | Mr. Murphy yesterday in the Xethanol offices?          |
| 5  | MR. ROTELLA:  I would like to                          |
| 6  | object at this point.  This is Ray                     |
| 7  | Rotella.  Discovery has been cut off                   |
| 8  | as of September 28, 2005.                              |
| 9  | I don't have a problem with you                        |
| 10 | asking how long he spoke to                            |
| 11 | Mr. Murphy.  I object and ask that                     |
| 12 | there be no conversations disclosed as                 |
| 13 | far as any communications with                         |
| 14 | Mr. Murphy as of the cutoff date of                    |
| 15 | the discovery, September 28, 2005.                     |
| 16 | A.   Probably a minute and a half.                     |
| 17 | Q.   Did you discuss with Mr. Murphy                   |
| 18 | your deposition today?                                 |
| 19 | A.   No.                                               |
| 20 | Q.   I am sorry?                                       |
| 21 | A.   I said no, I did not.                             |
| 22 | Q.   Had you at any time discussed                     |
| 23 | with Mr. Murphy your deposition today?                 |
| 24 | A.   No, I have not.                                   |
| 25 | Q.   Have you at any time discussed                    |

```
 1              FRANZ SKRYANZ
 2   with Mr. Murphy his pending bankruptcy case
 3   in the Middle District of Florida?
 4       A.    No, I have not.
 5       Q.    I am going to ask my partner,
 6   Matt Gray, to hand you what was marked at a
 7   previous deposition as Exhibit 2.
 8             Do you have that, sir?
 9       A.    Yes, I have that in front of me.
10       Q.    What is the title of the
11   document you have in front of you, just so we
12   are sure we are all on the same page?
13       A.    United "States Bankruptcy Court,
14   Southern District of New York, In re:  John
15   J. Murphy, Debtor.  Rivertree Landing LLC,
16   Plaintiff."
17       Q.    In the middle of the page does
18   it say third party Franz Skryanz responds to
19   subpoena to produce?
20       A.    Yes.
21       Q.    Before we go to Exhibit 2, sir,
22   let me ask you did you bring any documents
23   with you to the deposition here today?
24       A.    Yes, I did.
25       Q.    Tell us what you brought with
```

```
 1              FRANZ SKRYANZ
 2   you today.
 3        A.   It's going to take a while
 4   because it's quite a stack of papers.
 5        Q.   Give me a general summary of
 6   what it is, like e-mails, correspondence,
 7   stock ledger books.  I am not asking for a
 8   page-by-page description.
 9             MR. PALMER:  Mr. Spivey, this is
10        Devin Palmer.  I believe Mr. Skryanz
11        has brought the documents we
12        previously provided to you.  First is
13        the cover letter dated September 12,
14        2006 where I forwarded to Mr. Skryanz
15        the subpoena to produce.
16             I believe the rest of the
17        documents are the items you provided
18        me at the previous deposition.  I
19        believe that is everything that he
20        brought.
21        Q.   Sir, did you bring with you the
22   hard copy ledger book of Xethanol?
23        A.   No, I did not.
24             MR. SPIVEY:  Devin, in your
25        letter to me of September 20th, you
```

```
 1        FRANZ SKRYANZ
 2   indicated to me that Xethanol would
 3   provide that.
 4        MR. PALMER:  In that letter I
 5   indicated if I had a written agreement
 6   in place prior to our appearance, I
 7   would certainly provide that.
 8        I talked to Mr. Skryanz today.
 9   He indicated that the documents he
10   provided in his response are the
11   complete documents regarding the
12   Murphys in this case, from that book.
13        Mr. Skryanz also indicated that
14   Xethanol would still be able to
15   provide this book for your review if
16   you would like that, if we have some
17   kind of written agreement in place.
18        MR. SPIVEY:  Okay.  We will
19   forward that.  Let me reach for my
20   focus to Exhibit 2, which is before
21   Mr. Skryanz.
22        Q.   I ask you to turn to page 6 of
23   Exhibit 2.
24        A.   Yes.
25        Q.   Is that your signature on page
```

```
 1                FRANZ SKRYANZ
 2   6, sir?
 3        A.   Yes, it is.
 4        Q.   Let me ask you to turn to the
 5   next page.
 6        A.   Yes.
 7        Q.   On the upper right-hand corner
 8   it says number 135, page 002/005.
 9             Do you see that?
10        A.   Yes, I do.
11        Q.   Can you tell me what that
12   document is, sir?
13        A.   It is a letter from John J.
14   Murphy, Junior, to Chris Taylor, dated May
15   22, 2002.
16        Q.   Do you see the handwritten
17   notations on the document?
18        A.   Yes, I do.  They are my
19   handwritten notations.
20        Q.   When did you place those
21   handwritten notations?
22        A.   I am sorry.  What did you say?
23        Q.   When did you put those
24   handwritten notations on the document?
25        A.   I do not remember.
```

```
 1              FRANZ SKRYANZ
 2      Q.   Tell me what your handwritten
 3 notations represent.
 4      A.   They represent the stock
 5 certificate numbers for the shares mentioned
 6 in the letter.
 7      Q.   Those are shares of Xethanol
 8 Corporation?
 9      A.   Yes, sir.
10      Q.   Staying within Exhibit 2, I
11 would like to call your attention to the
12 final page of the document.
13      A.   Yes.
14      Q.   Can you tell me what that last
15 page is that you're looking at?
16      A.   It is an excerpt of Xethanol
17 Corporation's stock ledger in Excel format,
18 and it lists more or less in chronological
19 order the history of what happened with the
20 original 750,000 shares that were initially
21 in the name of Thomas A. Thomas, Trustee.
22      Q.   Did you prepare this Excel
23 spread sheet excerpt?
24      A.   Yes, sir.
25      Q.   When did you do that?
```

```
 1              FRANZ SKRYANZ
 2      A.   This is an ongoing process as
 3 certificates are issued, canceled.  This was
 4 not done on one day.
 5      Q.   Do you know, sir, who Thomas A.
 6 Thomas is?
 7      A.   I am sorry, I did not understand
 8 the question.
 9      Q.   Do you know who Thomas A. Thomas
10 is?
11      A.   No, I do not.
12      Q.   Have you ever met Mr. Thomas?
13      A.   No, I have not.
14      Q.   To your knowledge, have you ever
15 spoken to him?
16      A.   No, I have not.
17      Q.   Look at the last page of
18 Exhibit 2.
19           Can you tell me what the first
20 entry on the page represents?
21      A.   It represents stock certificate
22 number 40 was issued to Thomas A. Thomas,
23 Trustee, dated 12-1-2002, for 750,000 shares,
24 which was subsequently canceled and replaced
25 by certificates number 69 through 73.
```

|     |     |
| --- | --- |
| 1   | FRANZ SKRYANZ |
| 2   | Q.  Going back to page 002/005 -- |
| 3   | A.  Yes. |
| 4   | Q.  -- which is the letter from |
| 5   | Mr. Murphy to Chris Taylor dated May 22, |
| 6   | 2002. |
| 7   | A.  Yes. |
| 8   | Q.  Does that document reflect the |
| 9   | cancellation and replacement of those stock |
| 10  | certificates? |
| 11  | A.  Yes, sir, it does. |
| 12  | Q.  Did you have any understanding, |
| 13  | sir, as to how or why John J. Murphy, Junior |
| 14  | was entitled or authorized to instruct |
| 15  | Xethanol to cancel or re-issue stock? |
| 16  | A.  No, I do not. |
| 17  | Q.  Do you know whether Mr. Murphy's |
| 18  | directive in his May 22, 2002 letter was |
| 19  | followed? |
| 20  | A.  Yes, it was. |
| 21  | Q.  Did you believe that Mr. Murphy |
| 22  | was authorized to direct you to do that? |
| 23  |     MR. ROTELLA:  Objection to the |
| 24  |     form of the question. |
| 25  | A.  Yes, I do believe that. |

|   |   |
|---|---|
| 1 | FRANZ SKRYANZ |
| 2 | Q.   What was your basis for |
| 3 | believing that Mr. Murphy was authorized to |
| 4 | instruct you to cancel and re-issue the |
| 5 | shares? |
| 6 | A.   Because Mr. Murphy, although he |
| 7 | not personally, rather through the Julianne |
| 8 | C. Murphy Trust, paid for the shares. |
| 9 | Q.   I am sorry, sir, who do you |
| 10 | believe paid for the shares? |
| 11 | A.   It was the Julianne C. Murphy |
| 12 | Revocable Trust. |
| 13 | Q.   Sir, are you looking for a |
| 14 | document? |
| 15 | A.   No, I am not. I was waiting for |
| 16 | your next question. |
| 17 | Q.   I understood you to say that you |
| 18 | were looking for something to refresh your |
| 19 | recollection. |
| 20 | A.   I did and I said it was the |
| 21 | Julianne C. Murphy Revocable Trust. |
| 22 | Q.   That is who you believe paid for |
| 23 | the 750,000 shares? |
| 24 | A.   Yes. |
| 25 | Q.   Did you actually look for or |

```
1              FRANZ SKRYANZ
2    find a document to refresh your recollection
3    on that point?
4         A.    Yes, I did.
5         Q.    What document did you find to
6    look at?
7         A.    It is says on the upper
8    right-hand corner Number 123 P003/004.  It is
9    a letter addressed to me.  And it says on top
10   "680 Myrtle Grove Lane, Richmond Hill,
11   Georgia" and it is signed by Julianne B.
12   Murphy.
13        Q.    Does the letter have a date on
14   it, sir?
15        A.    Yes, it does, February 11, 2004.
16        Q.    Is that a document that is
17   contained within Exhibit 2?
18        A.    Yes, it is.
19        Q.    And it is approximately three
20   pages after the memo dated May 22, 2002?
21        A.    Correct.
22        Q.    What about that letter of
23   February 11, 2004 refreshes your recollection
24   that the Julianne C. Murphy Trust paid for
25   the 750,000 shares?
```