UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

------------------------------------x

In re                              ORIGINAL

JOHN J. MURPHY, SR.,

               Debtor.

------------------------------------x

RIVERTREE LANDING LLC,

               Plaintiff,

v.


JOHN J. MURPHY, SR.,


               Defendant.

------------------------------------x

               September 8, 2006

               9:07 a.m.



    Deposition of CHRISTOPHER d'ARNAUD-TAYLOR,
taken by Plaintiff, pursuant to Subpoena, at
the offices of Greenberg Traurig, 200 Park
Avenue, New York, New York, before Jowell
Falsetta, a Certified Shorthand Reporter and
Notary Public within and for the State of New
York.


LEGALINK®

A MERRILL
COMMUNICATIONS
COMPANY

420 Lexington Ave
Suite 2108
New York, NY 10170

tel (212) 557-7400
tel (800) 325-3376
fax (212) 692-9171

www.merrilcorp.com

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES

2

```
 1

 2   A P P E A R A N C E S:

 3

 4   GREENBERG TRAURIG
          Attorneys for Plaintiff
 5        450 South Orange Avenue
          Orlando, Florida  32801
 6   BY:  I. WILLIAM SPIVEY II, ESQ.

 7

 8   KOSTO & ROTELLA, P.A.
          Attorneys for Defendant
 9        619 East Washington Street
          P.O. Box 113
10        Orlando, Florida  32802
     BY:  RAY ROTELLA, ESQ.

11

12

     BOYLAN BROWN CODE VIGDOR & WILSON, LLP
13        Attorneys for Christopher d'Arnaud-Taylor
          2400 Chase Square
14        Rochester, New York  14604
     BY:  DEVIN LAWTON PALMER, ESQ.

15

16

17

18

19

20

21

22

23

24

25
```

3

1

2          IT IS HEREBY STIPULATED AND

3     AGREED by and between the attorneys

4     for the respective parties herein that

5     filing and sealing be and the same are

6     hereby waived.

7          IT IS FURTHER STIPULATED AND

8     AGREED that all objections, except as

9     to the form of the question, shall be

10    reserved to the time of the trial.

11         IT IS FURTHER STIPULATED AND

12    AGREED that the within deposition may

13    be signed and sworn to before any

14    officer authorized to administer an

15    oath with the same force  and effect as

16    if signed and sworn to before the

17    Court.

18

19

20

21

22

23

24

25

4

1          CHRISTOPHER d'ARNAUD-TAYLOR

2      C H R I S T O P H E R   d' A R N A U D

3      T A Y L O R,   360 West 22nd Street, Apartment

4          16B, New York, New York, being first

5          duly sworn by Jowell Falsetta, a Notary

6          Public of the State of New York, was

7          examined and testified as follows:

8              MR. SPIVEY:  We have just spoken

9          off the record and agreed to some

10         ground rules for today's deposition,

11         both depositions I should say.

12             And the stipulations we have

13         reached, that any objections to form

14         have to be made here or they are

15         waived.  But there are no other

16         agreements made; is that correct?

17             MR. ROTELLA:  That is correct.

18             MR. PALMER:  I would also like

19         Mr. Taylor to read and sign.

20             MR. ROTELLA:  There have been

21         some off-the-record discussions

22         whether Greenberg Traurig is in a

23         conflict because they represent

24         Xethanol on matters that could have

25         possibly given them insight into

CHRISTOPHER d'ARNAUD-TAYLOR

1

2    things that they otherwise would not

3    get insight into.  It's premature at

4    this point until I know more.

5        But I do want to reserve my

6    right to object to Greenberg Traurig

7    representing Rivertree based on the

8    potential conflict I've now heard.

9  EXAMINATION BY MR. SPIVEY:

10    Q.    Would you state your full name

11  for the record, please.

12    A.    Christopher d'Arnaud Taylor.

13    Q.    And where do you live, sir?

14    A.    New York.

15    Q.    How long have you lived in New

16  York?

17    A.    More than 20 years.

18    Q.    Let me show you what we will

19  mark as Exhibit 1.  It's a second amended

20  notice of taking deposition.

21        Have you seen that document or

22  the subpoena that relates to it?

23        (Notice of taking deposition

24    marked for identification, Exhibit 1.)

25    Q.    I don't know if you have seen

1          CHRISTOPHER d'ARNAUD-TAYLOR

2    that.

3          A.     I don't know if I have seen this

4    one.

5          Q.     Do you understand, sir, that you

6    are here this morning as the corporate

7    representative of London Manhattan Limited,

8    Inc. most knowledgeable of the matters set

9    forth on Exhibit A of the second amended

10   notice of taking deposition?

11         A.     Yes.

12         Q.     What is your position within

13   London Manhattan Limited, Inc.?

14         A.     Sole stockholder and president.

15         Q.     Who are the other officers of

16   London Manhattan Limited?

17         A.     Franz Skryanz.

18         Q.     What is Mr. Skryanz's position

19   in the company?

20         A.     He is secretary and treasurer.

21         Q.     Are there any other officers,

22   sir?

23         A.     As of today, no.

24         Q.     I am gathering from your prior

25   testimony Mr. Skryanz doesn't have any stock

CHRISTOPHER d'ARNAUD-TAYLOR

in London Manhattan Limited?

    A.    No.

    Q.    What type of business is London
Manhattan Limited engaged in?

    A.    From time to time it provides
management services.

    Q.    What type of management
services, sir?

    A.    My services.

    Q.    Give me some description of what
it is that you do.

    A.    On occasions I provide
management services to early stage companies.

    Q.    Early stage companies?

    A.    Yes.

    Q.    How long has London Manhattan
existed?

    A.    I believe about seven or eight
years.

    Q.    Are you a founder of the
company?

    A.    Yes.

    Q.    Were there any other founders?

    A.    At that time?

CHRISTOPHER d'ARNAUD-TAYLOR

1

2    Q.    Yes.

3    A.    Yes.

4    Q.    Who were they?

5    A.    W. Scott Smith.

6    Q.    Any others?

7    A.    I don't recall.  I don't think

8 so.

9    Q.    Ever had your deposition taken

10 before, sir?

11    A.    Yes.

12    Q.    How many times?

13    A.    Probably about seven times.

14    Q.    If at any time today you don't

15 understand my questions, please ask me to

16 rephrase them.  I will be happy to do that.

17            If you don't ask me to rephrase

18 a question, I am going to assume that you

19 understood the question, and the answer you

20 provided is responsive to that question; is

21 that fair?

22    A.    Yes.

23    Q.    Do you understand you are under

24 oath this morning?

25    A.    Yes.

1    CHRISTOPHER d'ARNAUD-TAYLOR

2       Q.    Do you understand the legal

3    significance of that?

4       A.    No.

5       Q.    You have taken an oath to tell

6    the truth and nothing but the truth.

7            Do you understand the importance

8    of doing that?

9       A.    I understand the importance of

10   doing that, yes.

11      Q.    Tell me how it was determined

12   that you would be the corporate

13   representative of London Manhattan to appear

14   at this morning's deposition.

15      A.    Because I am the only corporate

16   representative.

17      Q.    You don't regard Mr. Skryanz as

18   a representative?

19      A.    I do.

20      Q.    Do you feel you are more

21   knowledgeable of the issues than Mr. Skryanz?

22      A.    I suppose because I am the

23   president and he is the secretary and

24   treasurer.

25      Q.    Are there any other employees of

CHRISTOPHER d'ARNAUD-TAYLOR

London Manhattan?

    A.    No.

    Q.    Are you an employee of the company?

    A.    Not really.

    Q.    Is Mr. Skryanz an employee of the company?

    A.    No.

    Q.    Does the company have an office address?

    A.    It don't have an office.  Its address would be care of my apartment.

    Q.    Is the company active and current at this time?

    A.    Could you please rephrase the question?

    Q.    Is it a validly existing corporation as of this date?

    A.    I don't know.

    Q.    To your knowledge, has it been dissolved or discontinued from a legal perspective?

    A.    To my knowledge, it hasn't been.

    Q.    When was the last time the