1       CHRISTOPHER d'ARNAUD-TAYLOR

2   A.    I never thought of it.

3   Q.    Let me ask you to turn to the
4 next page, which appears to be a letter from
5 Mr. Murphy to you dated August 1, 2003.

      Have you seen that before?

7   A.    I have.

8   Q.    What do you understand this
9 letter to mean?

10   A.    I understand the letter to
11 basically say that the previously issued
12 stock to the Rolls should be cancelled and
13 reissued.

14   Q.    Why did you understand that this
15 stock to the Rolls should be canceled and
16 reissued?

17   A.    Because basically received no
18 compensation, that is how I understood it.

19   Q.    Did Mr. Murphy discuss that with
20 you?

21   A.    He discussed it very briefly
22 with me and then I passed it over to
23 Mr. Skryanz.

24   Q.    What do you remember, do you
25 recall Mr. Murphy discussing with you

```
 1        CHRISTOPHER d'ARNAUD-TAYLOR
 2   relative to the alleged nonreceipt of
 3   compensation?
 4        A.   Basically just that.
 5        Q.   Did you at some point, sir,
 6   understand that Mr. Murphy was selling
 7   Xethanol stock to the Rolls entities?
 8             MR. ROTELLA:  Objection to the
 9        form of the question.
10        A.   I don't recall whether he was
11   selling it or whatever he was doing with it.
12        Q.   You see his reference says,
13   "Please be advised that I, John J. Murphy,
14   Jr., received no compensation for the stock
15   issued to the Roll entities"; correct?
16        A.   Correct.
17        Q.   What do you understand that to
18   mean?
19             MR. PALMER:  Objection to the
20        form of the question.
21             MR. ROTELLA:  Objection to the
22        form of the question.
23        A.   I don't have any understanding
24   beyond what it says.
25        Q.   There is a notation on this
```

CHRISTOPHER d'ARNAUD-TAYLOR

1
2   letter dated August 1, 2003 to number 69 and
3   70; correct?
4       A.   Correct.
5       Q.   What do you understand that to
6   mean?
7       A.   To refer to the two stock
8   certificates issued to the Roll entities.
9       Q.   Which are identified as number
10  69 and 70 on the memo from Murphy to you
11  dated June 22, 2002?
12      A.   On the annotation on that memo,
13  yes.
14      Q.   Going back to the letter of
15  August 1, 2003, it goes on to say that "I,
16  John J. Murphy, Jr., therefore request that
17  all stock be canceled and issued to Patrick
18  A. Railly for the benefit of the trust of
19  John J. Murphy, Jr."
20           Do you see that?
21      A.   Yes, I do.
22      Q.   Was that done?
23      A.   If it was done, it is a matter
24  of record.
25      Q.   Turning to the last page of

CHRISTOPHER d'ARNAUD-TAYLOR

1  Exhibit 2, which is a listing of various Xethanol stockholdings.

         Can you tell me whether it happened?

    A.   It would appear that it did.

    Q.   And what are you referring to, to make that testimony?

    A.   There is a certificate number 110 that would appear to be the reissuance of that.

    Q.   What do you understand that line to mean under certificate 110?

    A.   That the 300,000 shares from certificate 69 and 70 were replaced by that certificate.

    Q.   Were replaced by 110?

    A.   It would appear to be.

    Q.   Did you understand that Patrick Railly was the trustee of the trust of John J. Murphy, Jr.?

         MR. ROTELLA: Objection to the form of the question.

    A.   I assume him to be.

    Q.   Did Mr. Murphy ever tell you

CHRISTOPHER d'ARNAUD-TAYLOR

1
2  that Mr. Railly was a trustee of the trust of
3  John J. Murphy, Jr.?
4      A.   I don't recall any conversation
5  in which he did.
6      Q.   Did you dispute that he ever
7  told you that?
8          MR. ROTELLA:  Objection to the
9      form of the question.
10         MR. PALMER:  Objection to the
11     form of the question.
12     A.   I don't dispute that, no.
13     Q.   Did you ever speak to Mr. Murphy
14 about the trust of John J. Murphy, Jr.?
15     A.   Nope, not to the best of my
16 recollection.
17     Q.   Looking at the last page of
18 Exhibit 2, you will see in the middle of that
19 spread sheet Mr. Railly is listed seven
20 consecutive times?
21     A.   Yes.
22     Q.   And then down below under stock
23 certificate number 183, he is referenced
24 again; correct?
25     A.   Yes.

CHRISTOPHER d'ARNAUD-TAYLOR

Q. Do you have any record, sir, to identify which trust Patrick A. Railly may have been acting as trustee of with respect to those referenced stock certificates?

A. I personally don't, no.

Q. Do you know whether Mr. Railly held Xethanol stock as the trustee of multiple trusts?

MR. ROTELLA: Objection to the form of the question.

A. I don't personally know.

Q. Is there any documentation that would reflect that within Xethanol?

MR. PALMER: Objection to the form.

A. There is a stock ledger book, that is all.

Q. Sir, to the extent that the stock certificates issued by Xethanol merely say Patrick A. Railly, trustee, is there a reason they don't define with greater particularity which trust Mr. Railly is acting on behalf of?

A. This particular document is an

CHRISTOPHER d'ARNAUD-TAYLOR

1
2  Excel spread sheet printout and I don't
3  believe -- and it's not a formal corporate
4  document, I suspect.  And it's a matter of
5  record and the actual stock ledger book, it
6  will say the full name of who the trustee is
7  for, but this is an abbreviated printout.
8      Q.   Who has the formal stock ledger
9  book?
10     A.   It's maintained in the corporate
11 offices of Xethanol.
12     Q.   And where is that, by the way?
13     A.   1185 Avenue of the Americas,
14 20th Floor, New York, New York 10036, I
15 believe.
16     Q.   Who is the custodian of the
17 formal stock ledger book?
18     A.   The chief financial officer of
19 the corporation.
20     Q.   And who is that presently?
21     A.   Larry S. Bellone.
22     Q.   When is the last time you looked
23 at the formal stock ledger book?
24     A.   Three weeks ago.
25     Q.   Three weeks ago?

CHRISTOPHER d'ARNAUD-TAYLOR

A. Yes.

Q. Have you ever seen in the stock ledger book references to Patrick A. Railly, trustee?

A. I looked at very specific pieces of information in the book. I didn't look at anything with Patrick A. Railly specifically.

Q. I am sorry, go ahead.

A. And I certainly wouldn't have looked at it with a view to a full explanation of what he is.

Q. Do you believe that the stock ledger book of Xethanol Corporation contains more information than would appear on the face of the stock certificate?

A. It may.

Q. I just want to make sure I am understanding your testimony.

Is it your belief that the formal stock ledger book of Xethanol Corporation may specify on whose behalf Patrick A. Railly was acting with respect to stock certificates 110, 119, 120, 121, 122, 123, 124 and 183?

CHRISTOPHER d'ARNAUD-TAYLOR

2   A.   My testimony is it may do. The rest of my testimony is this is just a printout of an Excel spread sheet of what goes into a stock certificate book rather than the original document.

7   Q.   Looking at the letter dated August 1, 2003, can you tell me what Xethanol did in response to that letter?

10  A.   I believe when I received it, I gave it to Mr. Skryanz, and Mr. Skryanz I think acted upon it.

13  Q.   And what did he do?

14  A.   He reissued the stock certificates.

16  Q.   When did he do that?

17  A.   Precisely, I couldn't tell you.

18  Q.   Can you look at the last page of Exhibit 2 and give me any indication of when you think that may have happened?

21  A.   It says June 19th.

22  Q.   Of 2002?

23  A.   2002.

24  Q.   Look at the letter dated August 1, 2003.

Case 6:04-ap-00154-KSJ   Doc 287-5   Filed 02/06/07   Page 10 of 10

60

CHRISTOPHER d'ARNAUD-TAYLOR

Do you think that that date is accurate?

A. I don't know. I don't know whether or not the date put on here is accurate or otherwise.

Q. When you say the date put on here, you're referring to the one on the spread sheet?

A. On the spread sheet.

Q. To the extent that you or Mr. Skryanz took action in response to Mr. Murphy's letter of August 1, 2003, such action would have taken place subsequent to August 1, 2003; correct?

A. Yes, but my suspicious feeling is that the 6-19 date is the same date as the original issuance of the stock.

Q. Which would be incorrect?

A. Probably.

Q. But it is your belief that in response to Mr. Murphy's letter to you of August 1, 2003, stock certificate number 110 was issued to Patrick A. Railly as trustee?

A. It would appear so.

LEGALINK, A MERRILL CORPORATION
(800) 325-3376     www.Legalink.com