CHRISTOPHER d'ARNAUD-TAYLOR

Q. When Murphy was making loans to London Manhattan, was he charging interest?

A. No.

Q. They were interest-free loans?

A. Yes.

Q. Going back to Exhibit 16, your payment of $5,000 was made on July 22, 2003.

A. Yes.

Q. Would that give us any insight as to when he made that loan to you?

A. No, but I do remember that we did have a reconciliation to the account.

Q. How long did the loan remain outstanding before you repaid it?

A. Before I started repaying it?

Q. Yes.

A. I think he started advancing me money -- when was this, 2003?

Q. Yes, yes.

A. He started advancing me monies in 2002 sometime, I believe.

Q. You said that the approximate total of the advance was $40,000?

A. That's right.

CHRISTOPHER d'ARNAUD-TAYLOR

Q. Do you know whether it was extended to you in one, three, nine installments?

A. Several installments.

Q. Did you have a need for money?

A. At that time, yes.

Q. Why did you ask Mr. Murphy for money as opposed to a lending institution or some other source?

MR. PALMER: Objection to the form.

A. We were opening a business relationship.

Q. As you sit here today, do you regard Mr. Murphy as a friend?

A. Yes.

Q. When did your friendship with him start?

A. It evolved. I mean it started off as a business relationship solely and then it became more of a friendly relationship later on.

Q. Let me show you, sir, what we will mark as Exhibit 18. I would ask you to

        CHRISTOPHER d'ARNAUD-TAYLOR

1    turn to the purple tab on page 6, which

2    reflects a wire transfer to Mr. Murphy on

3    October 24, 2003 in the amount of $2,000.

4            What does that represent?

5      A.    I presume the same, although I

6    don't know.

7           (Wire transfer marked for

8         identification, Exhibit 18.)

9      Q.    Is there a reason that you're

10   repaying these loans in little dribs and

11   drabs as opposed to waiting and making a more

12   significant advance?

13     A.    It was my liquidity that was

14   driving how I was paying him.

15     Q.    When you say "my liquidity"?

16     A.    London Manhattan's liquidity.

17     Q.    Was it fair to say London

18   Manhattan was in some financial difficulty in

19   2003?

20     A.    It was not being paid its fee.

21     Q.    How?

22     A.    By Xethanol.  Xethanol was short

23   of money and the other client company was

24   short of money.

CHRISTOPHER d'ARNAUD-TAYLOR

Q. Let me show you, sir, what we will mark as 19. This is another set of banking records and I will ask you to turn to page 5 of 9. It looks like on November 13, 2003 London Manhattan wired to Mr. Murphy $2,000.

Was that as a repayment of a loan?

A. Yes, it seems to be.

(Banking records marked for identification, Exhibit 19.)

Q. Let me show you what we will mark as Number 20, and I would ask you to turn to page 3 of 9 and then page 6 of 9. On page 3 it appears that you wired to Mr. Murphy $2,000 on December 4, 2003; correct?

A. Yes.

(Banking records marked for identification, Exhibit 20.)

Q. Another repayment of a loan?

A. I'm assume that is that.

Q. And then 15 days later, on December 19, 2003, you wired him another

```
                CHRISTOPHER d'ARNAUD-TAYLOR
 1
 2    $1,000; is that right?
 3              MR. PALMER:  Objection to the
 4        form.
 5        Q.    On page 6.
 6        A.    On what date?
 7        Q.    December 19, 2003.
 8        A.    Yes.
 9        Q.    Is that right?
10        A.    Yes.
11        Q.    Is there a reason that you made
12    two separate small payments to Mr. Murphy in
13    a 15-day period in December of 2003?
14        A.    No.
15        Q.    And it's your sworn testimony
16    those are still loan repayments?
17        A.    It is my testimony that I
18    believe them to be loan repayments.
19        Q.    Let me show you what we will
20    mark as Exhibit 21.  And I would ask you to
21    turn to page 2 of 9.
22              On January 30, 2004, it appears
23    that London Manhattan wired $3,500 to
24    Mr. Murphy; correct?
25        A.    Correct.
```

CHRISTOPHER d'ARNAUD-TAYLOR

1
2          (Banking records marked for
3     identification, Exhibit 21.)
4     Q.    And is it your testimony that
5  that also is a loan repayment?
6          MR. PALMER:  Objection to the
7     form.
8     A.    I believe that is what they are.
9     Q.    Are you aware, sir, that
10 Mr. Murphy filed bankruptcy in February of
11 2004?
12         MR. PALMER:  Objection to the
13    form.  You mean today does he realize
14    or at the time?
15    Q.    Today do you realize?
16    A.    Today?
17    Q.    Yes.
18    A.    I realized he filed bankruptcy,
19 I don't recall exactly what date it was.
20    Q.    If I told you it was in February
21 of 2004, would you have any reason to
22 disagree with that?
23    A.    No.
24    Q.    If you add up these various loan
25 repayments that we reviewed in Exhibits 16

CHRISTOPHER d'ARNAUD-TAYLOR

through 21, I think you will find that they total $23,000.

    MR. ROTELLA: I don't mean to interrupt you, but I think you missed a payment on the last exhibit. Looks like it was a $5,000 payment. Did I miss something?

    MR. SPIVEY: Which one are you on?

    MR. ROTELLA: 20. It will save me from asking about it later.

    Q.    On December 5th there is another payment of $5,000?

    A.    There is.

    Q.    Any explanation of why you sent him $2,000 on the 4th and then another $5,000 the very next day?

    A.    No.

    Q.    Did you add up all of those payments, including the one that Ray just pointed out, which I appreciate, I think you find they total $23,000.

    Is it your belief that you paid more than that to Mr. Murphy?

CHRISTOPHER d'ARNAUD-TAYLOR

A. I may have. I am not quite sure.

Q. But there would be books and records that would reflect exactly what you did pay to him?

A. There would be.

Q. Let me show you, sir, what we will mark as Exhibit 22.

Can you tell me what this is, please?

A. It's a stock certificate.

(Stock certificate marked for identification, Exhibit 22.)

Q. And to whom is it issued?

A. Julian C. Murphy Revocable Trust. I can't read what it says, Patrick Railly, trustee.

Q. We will look at some stock certificate in a minute that will reflect only Patrick A. Railly, trustee.

Did there come a time, sir, when Xethanol changed its policies as to what information went on the stock certificates?

A. No.

CHRISTOPHER d'ARNAUD-TAYLOR

Q. To the extent that there were stock certificates that are issued only to Patrick A. Railly, trustee, then we see this one with the full name of Julian C. Murphy Revocable Trust for Patrick A. Railly as trustee.

Would you have any explanation for that change?

A. No.

Q. Sir, let me hand you what we will mark as Exhibit 23.

Have you ever seen this document before?

A. I have.

(Change of name document marked for identification, Exhibit 23.)

Q. Tell me what this is, please?

A. It relates to the change of name of the company called London Manhattan.com to Xethanol Corporation, to the reverse split to the shareholders of that enterprise and the new issues of stock of the conversion to Xethanol.

Q. Who prepared Exhibit 23?

1       CHRISTOPHER d'ARNAUD-TAYLOR

2       A.      I did.

3       Q.      And when did you do that?

4       A.      Precisely what date, I couldn't
5  tell you.  But it would be sometime in the
6  third or fourth quarters of 2001, I believe.

7       Q.      That is when the reverse merger
8  transaction took place?

9       A.      No, it was not a reverse merger
10 transaction.  It was basically taking the
11 corporation, which was London Manhattan.com,
12 and previous to that was Real Time, and
13 taking the shareholders of that enterprise
14 and reversing that down and take the stock
15 that was transferred into that company
16 associated with Xethanol.

17      Q.      But you personally prepared 23?

18      A.      I personally prepared 23.

19      Q.      At the in the middle portion
20 there, there is section denominated "New
21 issues regarding converting to Xethanol."

22              Do you see that?

23      A.      Yes.

24      Q.      What do you mean by that, this
25 title?