```
 1        CHRISTOPHER d'ARNAUD-TAYLOR
 2   the shareholder interest in the Xethanol
 3   Corporation."
 4           Do you know what shareholder
 5   interest Mr. Rotella is referring to in his
 6   letter here?
 7        A.   I don't specifically know.
 8        Q.   Is this part of the ongoing
 9   process that related to the 500,000 shares
10   purchased in May of 2002?
11        A.   My recollection is that it was.
12           MR. ROTELLA:  I didn't hear the
13        question.
14           (The requested portion was
15        read.)
16           MR. ROTELLA:  I object to the
17        form of the question and I move to
18        strike the answer.
19        Q.   Sir, let's go back and look at
20   Mrs. Murphy's letter to Mr. Skryanz dated
21   May 11, 2004.
22        A.   What date is that?
23        Q.   February 11th.
24        A.   Okay.
25        Q.   The third paragraph says.
```

1       CHRISTOPHER d'ARNAUD-TAYLOR
2   "Concurrently with the above, the Julian C.
3   Murphy Revocable Trust has decided to
4   purchase an additional 500,000 shares of
5   Xethanol at 10 cents a share, for a total of
6   $50,000."
7           Do you see that?
8       A.   I see that.
9       Q.   Do you believe that stock
10  transaction referenced in Mrs. Murphy's
11  letter is the subject matter being referred
12  to in Exhibit 28?
13      A.   I would assume so.
14      Q.   Do you recall there being some
15  question or concern as to whether the Julian
16  C. Murphy Revocable Trust acquisition of
17  500,000 shares of Xethanol stock in May of
18  2002 was somehow a violation of law?
19      A.   The auditors asked us to check
20  up.
21      Q.   The answer was somebody was
22  concerned that there had been a violation of
23  law; is that fair?
24          MR. PALMER:  Objection to the
25      form.

```
1        CHRISTOPHER d'ARNAUD-TAYLOR
2              MR. ROTELLA:  Objection to the
3        form of the question.
4        A.    The auditors are basically
5   making sure that there isn't.
6        Q.    Did the auditors indicate to you
7   what law they thought might be violated?
8              MR. PALMER:  Objection to the
9        form.
10       A.    No.
11       Q.    Did you have any understanding
12  as to why Mr. Rotella was sending you
13  Exhibit 28?
14       A.    I am assuming that he was asked
15  by Mr. Skryanz.
16             MR. ROTELLA:  Objection, and
17       move to strike the assumption.
18       Q.    Did you understand Mr. Rotella
19  to represent the Julian C. Murphy Revocable
20  Trust?
21             MR. ROTELLA:  Objection to the
22       form of the question.
23       A.    I assume so.
24       Q.    Why did you assume that?
25       A.    Because he wrote.
```

CHRISTOPHER d'ARNAUD-TAYLOR

Q. From your perspective, sir?

A. Yes.

Q. Did this letter just come to you from left field?

MR. PALMER: Objection to the form.

A. It didn't come to me from left field. We were basically asked by the auditors to get a legal opinion that no law had been broken.

Q. Did somebody from Xethanol seek that opinion?

A. Yes.

Q. And did somebody from Xethanol ask Mr. Rotella to write a letter like Exhibit 28 to that concern?

A. Yes.

Q. Who would that be?

A. Mr. Skryanz.

Q. Did you ever meet Mr. Rotella prior to today?

A. I don't think so.

Q. Did you ever speak to him on the phone prior to today?

```
 1           CHRISTOPHER d'ARNAUD-TAYLOR
 2       A.    I believe we were on a
 3   conference call once.
 4       Q.    When was that?
 5       A.    About a year ago.
 6       Q.    Who else was on the conference
 7   call?
 8       A.    I think our attorneys in
 9   Florida.  I don't know.  I can't be sure.  I
10   think so.  I don't know.
11       Q.    Who were your attorneys in
12   Florida?
13       A.    Baker, Hostetel.
14       Q.    Have you ever exchanged any
15   e-mails, letters, faxes or any other
16   documentation with Mr. Rotella concerning
17   Mr. Murphy's bankruptcy?
18       A.    No.
19       Q.    Let me hand you what we will
20   mark as 29.  This appears to be a letter
21   dated May 18, 2004.
22             Have you ever seen this before?
23       A.    Yes.
24             (Letter dated 5-18-04 marked for
25       identification, Exhibit 29.)
```

CHRISTOPHER d'ARNAUD-TAYLOR

1
2   Q.   Who is this letter from?
3   A.   Arnold Berman & Company.
4   Q.   Who is Arnold Berman & Company?
5   A.   At that time they were our auditors.
7   Q.   Was Exhibit 29 actually signed and sent by Arnold Berman & Company?
9   A.   I can't say whether it was or wasn't, but this clearly was being sent to us. I am assuming it was.
12  Q.   What is your understanding or impression of the meaning of Exhibit 29?
14  A.   I think the auditors were concerned that somebody should render a broader opinion on the whole transaction.
17  Q.   Broader than what Mr. Rotella offered?
19  A.   Yes.
20  Q.   And the auditors are setting forth the language that they thought would be satisfactory?
23  A.   Yes.
24  Q.   To your knowledge, did any attorney provide the type of information that

| | |
|---|---|
| 1 | CHRISTOPHER d'ARNAUD-TAYLOR |
| 2 | is suggested in Exhibit 29? |
| 3 | A.   I believe so. |
| 4 | Q.   Do you know who did that? |
| 5 | A.   A law firm from Houston that was |
| 6 | our law firm at that time. |
| 7 | Q.   And what is the name of that |
| 8 | firm? |
| 9 | A.   Give me moment. I can't |
| 10 | remember right now. |
| 11 | Q.   Would that be Roberts, Marcal |
| 12 | & Gary? |
| 13 | A.   It would be. |
| 14 | Q.   Do you know somebody there named |
| 15 | Richa Hermani? |
| 16 | A.   Yes. |
| 17 | Q.   Who is Richa Hermani? |
| 18 | A.   Richa was an attorney with the |
| 19 | firm and I don't know if she is now. |
| 20 | Q.   What type of practice was she |
| 21 | involved in? |
| 22 | A.   Acted on Xethanol Permate |
| 23 | Refining, Inc., so they are corporate law |
| 24 | firm with some expertise in the oil patch. |
| 25 | She was the lawyer handling the acquisition |

1       CHRISTOPHER d'ARNAUD-TAYLOR

2  transaction.  She was not the corporate

3  lawyer.

4       Q.   Let me show you, sir, what we

5  will mark as Exhibit 30.

6            In the middle of the first page

7  there appears to be an e-mail exchange

8  between Mr. Rotella an Ms. Hermani.

9            Do you agree with that?

10      A.   Yes, sir.

11           (E-mail marked for

12      identification, Exhibit 30.)

13           MR. ROTELLA:  Where is my name

14      on here?

15           MR. SPIVEY:  It says from Ray

16      Rotella.

17           MR. ROTELLA:  I see, okay.

18      Q.   Down at the bottom of the first

19  page of Exhibit 30, there is an e-mail dated

20  July 14, 2004 from Ms. Hermani to

21  Mr. Rotella, on which it appears Mr. Skryanz,

22  you and J. Bradley Mitchell are copied.

23           Do you see that?

24      A.   I do.

25      Q.   Who is Bradley Mitchell?

CHRISTOPHER d'ARNAUD-TAYLOR

1
2   A.   He was a senior partner at
3   Roberts Marcal & Gary. He is no longer
4   there.
5   Q.   At the bottom of Exhibit 30
6   there are some references to Xethanol 0016
7   and the next page is 0078.
8       Do you see that?
9   A.   Yes.
10  Q.   Do you know what that
11  represents?
12  A.   No.
13  Q.   Let me show you, sir, what we
14  are going to mark as Exhibit 31.
15      Tell me what this is, please.
16  A.   It's an extract from Quick Books
17  accounting.
18      (Quick Books accounting marked
19      for identification, Exhibit 31.)
20  Q.   On the third entry down it says
21  "Journal entry dated December 31, 2001,
22  number AJE5."
23      Do you see that?
24  A.   I do.
25  Q.   What do you understand AJE5 to

1        CHRISTOPHER d'ARNAUD-TAYLOR
2   mean?
3        A.   I am not the accountant.  I
4   didn't prepare the document, so I don't know
5   what AJE5 means.
6        Q.   Who would have prepared this?
7        A.   Franz Skryanz.
8        Q.   And it then says "John Murphy
9   memo 750,000 shares."  The next entry says
10  11-10.
11            Do you understand what that
12  means?
13       A.   No.
14       Q.   And then under the --
15       A.   I am assuming it's an accounting
16  number.
17       Q.   -- it says "Split AR from
18  shareholders."
19            What do you understand that to
20  mean?
21       A.   I would assume it was account
22  receivable.
23       Q.   And who is the shareholder here?
24       A.   The way that is described, it
25  would be John Murphy.