CHRISTOPHER d'ARNAUD-TAYLOR

Q.   Is it the equivalent of an MBA?

A.   Yes.

Q.   Certainly from your MBA equivalent program, you took some accounting?

A.   I never did.

Q.   You never did?

A.   I never did.

Q.   What do you understand the next entry, we are still on Exhibit 32 by the way, what do you understand the next entry, dated 2-8-02, to mean or represent?

MR. ROTELLA: Objection to the form.

A.   Which entry is it?

Q.   Dated 2-8-02, entitled "Deposit."

A.   Seems to me to be a similar entry.

Q.   Similar to the one above it?

A.   Similar to the one above it.

Q.   So the whatever happened above is the same way you would answer this one?

A.   Yes.

Q.   What about the one dated 5-2-02,

CHRISTOPHER d'ARNAUD-TAYLOR

2  what do you make of that entry?
3       A.   I don't know.
4       Q.   That means nothing to you?
5            MR. PALMER:  Objection to the
6       form.
7       A.   It's a journal entry.
8       Q.   What does it mean to you, sir?
9       A.   It means someone made a journal
10 entry and so I don't know what it means
11 specifically.
12      Q.   Sir, let me show you what we
13 will mark as Exhibit 33.
14           Have you ever seen this before,
15 sir?
16      A.   No.
17           (Document marked for
18      identification, Exhibit 33.)
19      Q.   The top of this says "Xethanol
20 Corporation," do you see?
21      A.   Yes.
22      Q.   Does that give you any guidance
23 as to who prepared this?
24      A.   Would have been prepared by
25 Mr. Skryanz.

```
1        CHRISTOPHER d'ARNAUD-TAYLOR
2        Q.    You see the note at the bottom
3   of Exhibit 33?
4        A.    I do.
5        Q.    It says, "This is the amount
6   remaining/paid to Xethanol.  Of this 50,000
7   was applied to John Murphy's purchase of
8   750,000 Xethanol shares (25,000 was received
9   previously) and the balance of $875 covered
10  part of the $154.86 loan interest charged to
11  the account."
12             What does that mean to you?
13       A.    It means that's a note which is
14  stating what it just said; do I know what
15  else that means, no.  I don't know what this
16  account is.
17       Q.    Now, the date of these entries
18  start on May 2, 2002; right?
19       A.    They do.
20       Q.    And the first entry seems to
21  reflect the $173,575 that Murphy or his
22  entity deposited into this Xethanol account
23  in Florida; correct?
24       A.    It would appear so.
25       Q.    After that we see a series of
```

```
 1         CHRISTOPHER d'ARNAUD-TAYLOR
 2    payments, temporary check issuances, et
 3    cetera; correct?
 4         A.    We do.
 5         Q.    And those would coincide with
 6    the same payments that are referenced on
 7    Mr. Skryanz's memo to you on May 21, 2002;
 8    correct?
 9         A.    They would appear to.
10         Q.    Now, the note reference is next
11    to the balance of $50,875; correct?
12         A.    Yes.
13         Q.    And we know from Mr. Skryanz's
14    memo to you that $50,000 was used to purchase
15    500,000 shares of Xethanol stock on May 2,
16    2002; right?
17              MR. PALMER:  Objection to the
18         form.
19         A.    That is what it says.
20         Q.    The note makes a reference to
21    $25,000 was received previously.
22              Do you see that?
23         A.    Yes, I do.
24         Q.    Do you have any understanding
25    what that means or refers to?
```

```
 1        CHRISTOPHER d'ARNAUD-TAYLOR
 2     A.   Nope.
 3     Q.   Do you recall ever receiving
 4  $25,000 from Murphy or any of his related
 5  entities?  When I say "you," I am referring
 6  to Xethanol.
 7     A.   No.
 8     Q.   Do you know if Mr. Murphy or his
 9  entities paid Xethanol $25,000 when the
10  initial 750,000 shares of Xethanol stock were
11  acquired?  You never heard anybody talk about
12  that?
13     A.   No.
14     Q.   You see that additional amounts
15  were drawn from this on May 6, 2002.
16          Do you see that?
17     A.   Yes.
18     Q.   Do you know who would have
19  written those checks?
20     A.   Franz Skryanz.
21     Q.   And they would have been written
22  on the Florida account?
23     A.   They would have been.
24     Q.   There is also a reference, sir,
25  on 5-8-02 of a partial payment from 2001
```

```
 1        CHRISTOPHER d'ARNAUD-TAYLOR
 2   being made to London Manhattan Ltd.
 3            Do you see that?
 4        A.   I do.
 5        Q.   What do you understand that to
 6   mean or represent?
 7        A.   It owed me money.  It owed
 8   London Manhattan money.  Franz would have
 9   used that money to discharge some
10   obligations, including the Permeant Refining.
11        Q.   What is Permeant Refining?
12        A.   Subsidiary company.
13        Q.   Of who?
14        A.   Xethanol.
15        Q.   The note that is referenced at
16   the bottom of 33, who do you think at
17   Xethanol would have the most knowledge of the
18   meaning of that note?
19        A.   Franz Skryanz.
20        Q.   Mr. Taylor, let me hand you what
21   will be marked as Exhibit 34.
22            Can you tell me what this is,
23   please?
24        A.   A canceled stock certificate.
25            (Canceled stock certificate
```

```
                CHRISTOPHER d'ARNAUD-TAYLOR
1
2         marked for identification, Exhibit
3         34.)
4         Q.    And this appears to be stock
5    certificate number 40?
6         A.    It does.
7         Q.    750,000 shares to Thomas A.
8    Thomas, trustee; correct?
9         A.    It does.
10        Q.    Dated December 1, 2001?
11        A.    Correct.
12        Q.    Do you know who put the word
13   "Canceled" on it?
14        A.    I don't know specifically, but I
15   would assume that it is Mr. Skryanz.
16        Q.    As of December 1, 2001 it was
17   your corporate practice apparently to just
18   put in the name of the trustee?
19             MR. ROTELLA:  Objection to the
20        form of the question.
21        A.    I wouldn't say it was corporate
22   practice, it seems to be.
23        Q.    It's done here; right?
24        A.    It's done here.
25        Q.    Sir, let me hand you what we
```

```
 1        CHRISTOPHER d'ARNAUD-TAYLOR
 2   will mark as Exhibit 35.  This is another
 3   version of a document that is attached to
 4   Exhibit 2; correct?
 5        A.   It would appear so.
 6             (Document marked for
 7        identification, Exhibit 35.)
 8        Q.   On Exhibit 35, is that your
 9   handwriting?
10        A.   No.
11        Q.   Do you recognize whose it is?
12        A.   I believe it would be
13   Mr. Skryanz.  Doesn't look his usual.
14        Q.   It doesn't look his usual?
15        A.   It doesn't look as good as
16   usual, but the 69 or the 70 are definitely
17   his handwriting.
18        Q.   Sir, let me hand you what we
19   will mark as Exhibit 36.
20             Do you see Mr. Railly referenced
21   as the successor trustee of at least five
22   different trusts here?
23        A.   I do.
24             (Document marked for
25        identification, Exhibit 36.)
```

CHRISTOPHER d'ARNAUD-TAYLOR

Q. Are you aware of Mr. Railly serving as trustee of any other Murphy related trust?

A. No.

Q. You're not saying he doesn't, you are just not aware of it?

A. No, I don't know what Mr. Railly does.

Q. Going back to your stock summary or register, whatever you want to call it, that is attached to Exhibit 2. You see on that summary numerous references to Patrick A. Railly, trustee; correct?

A. I do.

Q. And we have also seen on Exhibit 34 a reference to Thomas A. Thomas, trustee; correct?

A. We do.

Q. How would we know which trust Patrick A. Railly as trustee is acting on behalf of if your stock certificates only say Patrick A. Railly, trustee?

A. I wouldn't know.

Q. They could be interchangeable,

|    |                                                      |
|----|------------------------------------------------------|
| 1  | CHRISTOPHER d'ARNAUD-TAYLOR                          |
| 2  | could they not?                                      |
| 3  |     MR. PALMER:  Objection to the |
| 4  | form.                                                |
| 5  | A.   Possibly.                                       |
| 6  | Q.   Do you know if any of your stock                |
| 7  | certificates were issued in that manner so as        |
| 8  | to enable the trustee to be very flexible            |
| 9  | with them?                                           |
| 10 | MR. ROTELLA:  Objection to the                       |
| 11 | form of the question.                                |
| 12 | A.   I think it would be outrageous                  |
| 13 | to think that.                                       |
| 14 | Q.   Let me hand you, sir, a                         |
| 15 | collection of documents that we are going to         |
| 16 | mark as composite Exhibit 37.  It is a               |
| 17 | reasonably decent-sized stack of Xethanol            |
| 18 | stock certificates.                                  |
| 19 | Do you see that?                                     |
| 20 | A.   I do.                                           |
| 21 | (Stock certificates marked for                       |
| 22 | identification, Exhibit 37.)                         |
| 23 | Q.   Have you ever seen these before?                |
| 24 | A.   This stack --                                   |
| 25 | Q.   Yes, sir.                                       |