CHRISTOPHER d'ARNAUD-TAYLOR

you understood once represented Xethanol?

       Did it bother you in any way?

   A.   No.

   Q.   I turn to Exhibit 2, please. I particularly want to go back to that. I believe it is an August 2nd -- I'm sorry, August 1, 2003 letter.

   A.   Yes.

   Q.   Have you found it?

   A.   I have.

   Q.   It's notarized by Judy Persoff. Do you see that?

   A.   I do.

   Q.   In this letter there is a request for the Roll stock to be canceled and issued to Mr. Patrick Railly, to the benefit of the trust of Mr. John J. Murphy, Jr.

       Do you see that?

   A.   I do.

   Q.   From our knowledge of what happened so far, we know that the Roll entities acquired stock through a trust; correct?

   A.   Through two trusts.

CHRISTOPHER d'ARNAUD-TAYLOR

Q. I understand there were stocks issued to two Roll trusts.

In other words, Hope Roll was one trust and Bill Roll was another trust?

A. Correct.

Q. But their stock came from the first 750,000 stocks; is that correct?

A. Correct.

Q. Now, if the first 750,000 shares of stock were issued to the Julian Murphy Trust, and you received this request from John Murphy, knowing that he was not the source of the original stock, would you, as president, direct Xethanol to issue stock to the John Murphy Trust or to the Julian Murphy Trust?

MR. SPIVEY: Objection to the form.

A. I have no recollection of how this was processed.

Q. I understand you have no recollection.

A. Logically, to the person originally issued to.

| | |
|---|---|
| 1 | CHRISTOPHER d'ARNAUD-TAYLOR |
| 2 | Q.   Whoever the issuer of the stock |
| 3 | to the Rolls was, if that transaction was |
| 4 | canceled out, as I understand it, you are |
| 5 | telling me that the new stock certificate |
| 6 | should be issued to the original stockholder? |
| 7 | MR. SPIVEY:   Objection to the |
| 8 | form. |
| 9 | A.   I believe that is how it should |
| 10 | be. |
| 11 | Q.   Even though Mr. Murphy would ask |
| 12 | otherwise? |
| 13 | A.   That is correct. |
| 14 | Q.   As he does in his letter; is |
| 15 | that correct? |
| 16 | A.   That is correct. |
| 17 | Q.   You were involved in Very Smart |
| 18 | Networks and Very Smart Business? |
| 19 | A.   Very Smart Networks and Very |
| 20 | Smart Building. |
| 21 | Q.   To the best of your knowledge, |
| 22 | what is the status of those entities today? |
| 23 | A.   I have no knowledge about them, |
| 24 | but I believe there are some disputes between |
| 25 | the Rolls and others. |

```
 1       CHRISTOPHER d'ARNAUD-TAYLOR
 2       Q.    To your knowledge, is there
 3  still an actual place of business where Very
 4  Smart Network is operating?
 5       A.    I don't think so, but I don't
 6  know.
 7       Q.    Have you been called upon by
 8  anyone at Very Smart Networks to go to either
 9  a stockholder meeting or director meeting?
10       A.    No.
11       Q.    The business they were in, did
12  you know if anyone has told you they ceased
13  doing business?
14       A.    No.
15       Q.    You just don't know?
16       A.    No.
17       Q.    You haven't pursued it to see
18  what your stock is worth in Very Smart
19  Networks?
20       A.    No.
21       Q.    Do you believe there is any
22  value in the stock of Very Smart Networks?
23       A.    No.
24       Q.    Why do you say that?
25       A.    Because John Murphy is not
```

```
1        CHRISTOPHER d'ARNAUD-TAYLOR
2   involved in it anymore and I suspect he was
3   the driving force behind it.
4        Q.   I want to talk to you about
5   Trafalgar Resource, Inc.  It was created
6   August 31st of 2004.
7             To your knowledge, did this
8   company ever undertake to do business?
9        A.   As that corporation?
10       Q.   That is correct.
11       A.   I don't think so.
12       Q.   To your knowledge, did the
13  company ever have any value?
14       A.   It had pro forma value only, if
15  transactions happened that were contemplated.
16       Q.   To your knowledge, those
17  contemplated, did they become a reality?
18       A.   They became a reality, but not
19  in Trafalgar.
20       Q.   Where did they become?
21       A.   It's Macedonia related.  It was
22  mineral mining operations in Macedonia.
23       Q.   Do you still have an interest in
24  Trafalgar, to your knowledge?
25       A.   I don't believe I ever had any
```

1  CHRISTOPHER d'ARNAUD-TAYLOR
2  interest in Trafalgar.  The corporation was
3  formed with the intent of doing something and
4  numerous stockholder agreements were
5  prepared.
6       Q.   Is it fair to say, to your
7  knowledge, that Trafalgar went out of
8  business?
9       A.   Trafalgar Resource is the only
10 one I know about, which is the one we would
11 be involved with.  I don't think he started
12 business.
13      Q.   Incorporated, but didn't really
14 do any business; is that a fair statement?
15      A.   Yes.
16      Q.   Let's look at some of these
17 later stock exhibits.  The last exhibit, I
18 think it was --
19      A.   37.
20      Q.   Yes.
21           If you would turn to the second
22 exhibit, 125,000 shares.
23      A.   Yes.
24      Q.   It says Thomas A. Thomas,
25 trustee.

|   |   |
|---|---|
| 1 | CHRISTOPHER d'ARNAUD-TAYLOR |

  1       CHRISTOPHER d'ARNAUD-TAYLOR
  2       A.    Yes.
  3       Q.    If you turn to the back, the
  4  second page.  Does this appear to be the
  5  front and back of this certificate?
  6       A.    It does.
  7       Q.    Is that the way the certificate
  8  looks?
  9       A.    Yes.
 10       Q.    Below it's signed, and the
 11  writing is not great, part of it is cut off,
 12  Patrick A. Railly, trustee, and it looks like
 13  Julian Murphy, and I am guessing that is
 14  Julian Murphy Trust.
 15             If the Julian Murphy Trust was
 16  not the owner of this certificate, would you
 17  have allowed the Julian Murphy Trust to
 18  transfer this certificate?
 19             MR. SPIVEY:  Objection to the
 20       form.
 21       A.    I hope not.
 22       Q.    Look at the next certificate.
 23  It is 87, for 127,000 shares.
 24       A.    Yes.
 25       Q.    Again the second page looks to

CHRISTOPHER d'ARNAUD-TAYLOR

1    be Patrick A. Railly, successive trustee for
2    the Julian Murphy Trust?
3         A.    Yes.
4         Q.    If the Julian Murphy Trust was
5    not the owner of this stock certificate,
6    would you have allowed the Julian Murphy
7    Trust to transfer this certificate?
8         A.    No.
9              MR. SPIVEY:   Objection to the
10        form.
11             MR. ROTELLA:   Okay.  That is all
12        the questions I have.
13             MR. SPIVEY:   Mr. Taylor, just a
14        couple of follow-ups relative to
15        Mr. Rotella's final questions to you.
16   EXAMINATION BY MR. SPIVEY:
17        Q.    What steps would you have
18   expected Xethanol to take to determine
19   whether Patrick A. Railly was a successor
20   trustee to Thomas A. Thomas, trustee?
21        A.    I don't know.
22        Q.    Would you have gotten any kind
23   of paper trail that would have reflected that
24   substitution of trustees?

```
                CHRISTOPHER d'ARNAUD-TAYLOR
 1
 2         A.    I don't know.
 3         Q.    I guess my point is how would
 4   you have gone about confirming whether
 5   Patrick A. Railly was, in fact, the successor
 6   trustee of the Julian Murphy Revocable Trust?
 7         A.    Good question.  I don't know.
 8              MR. SPIVEY:  That is all I have,
 9         sir.
10              MR. ROTELLA:  I have a follow-up
11         question.
12   EXAMINATION BY MR. ROTELLA:
13         Q.    With the letters we have been
14   through with Julian Murphy making statements
15   under oath and affidavits, would that have
16   been the type of documentation you would want
17   to see to confirm her ownership?
18         A.    Yes, I suppose so.
19              MR. SPIVEY:  No further
20         questions.
21              MR. PALMER:  I have no
22         questions.
23              MR. SPIVEY:  Right, but you want
24         to read the transcript?
25              MR. PALMER:  Yes.
```

```
 1        CHRISTOPHER d'ARNAUD-TAYLOR
 2            MR. ROTELLA:  He said that at
 3     the beginning.
 4            (Time noted:  3:20 p.m.)
 5
 6                CHRISTOPHER d'ARNAUD-TAYLOR
 7  Subscribed and sworn to before me
 8  this     day of            , 2006.
 9
10
11  Notary Public
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1

2                C E R T I F I C A T E

3  STATE OF NEW YORK    )

4                       : ss.

5  COUNTY OF NEW YORK   )

6

7         I, JOWELL FALSETTA, a Shorthand

8  Reporter and Notary Public within and for the

9  State of New York, do hereby certify:

10        That CHRISTOPHER d'ARNAUD-TAYLOR,

11 the witness whose deposition is hereinbefore

12 set forth, was duly sworn by me and that such

13 deposition is a true record of the testimony

14 given by the witness.

15        I further certify that I am not

16 related to any of the parties to this action

17 by blood or marriage, and that I am in no way

18 interested in the outcome of this matter.

19        IN WITNESS WHEREOF, I have hereunto

20 set my hand this 19 day of Sept, 2006.

21

22

23            _____
             JOWELL FALSETTA
24

25

```
                    I N D E X
    EXHIBITS
    No.  Ident.   Description

    1      5      Notice of taking deposition

    2     19      Document

    3     22      Articles of Incorporation

    4     27      Document

    5     93      Document

    6    110      E-mail

    7    112      Letter

    8    112      Letter dated 7-7-04

    9    115      E-mail

   10    116      E-mail

   11    120      Letter

   12    122      E-mail

   13    123      E-mail

   14    125      E-mail

   15    127      E-mail dated 11-2-04

   16    129      Documents

   17    139      Bank transactions

   18    183      Wire transfer

   19    144      Banking records

   20    144      Banking records

   21    146      Banking records
```

| | | | |
|---|---|---|---|
| 1 | | | |
| 2 | 22 | 148 | Stock certificate |
| 3 | 23 | 149 | Change of name document |
| 4 | 24 | 158 | Shareholders list |
| 5 | 25 | 162 | Printout |
| 6 | 26 | 165 | Fax |
| 7 | 27 | 177 | Two letters |
| 8 | 28 | 180 | Letter dated 5-5-04 |
| 9 | 29 | 185 | Letter dated 5-18-04 |
| 10 | 30 | 188 | E-mail |
| 11 | 31 | 189 | Quick Books accounting |
| 12 | 32 | 202 | Accounting document |
| 13 | 33 | 212 | Document |
| 14 | 34 | 216 | Canceled stock certificate |
| 15 | 35 | 218 | Document |
| 16 | 36 | 218 | Document |
| 17 | 37 | 220 | Stock certificates |

19  SIGNATURE LINE & JURAT - Page 250

20  EXAMINATION BY:

21  Mr. Spivey, pages 5-230, 248-249

22  Mr. Rotella, pages 239-248, 249-250

```
 1
 2    STATE OF NEW YORK    )
                          ss:
 3    COUNTY OF NEW YORK   )
 4        I wish to make the following changes,
      for the following reasons:
 5    PAGE LINE
              CHANGE FROM:
 6            CHANGE TO:
      REASON:
 7
 8            CHANGE FROM:
              CHANGE TO:
 9    REASON:
10            CHANGE FROM:
              CHANGE TO:
11    REASON:
12            CHANGE FROM:
              CHANGE TO:
13    REASON:
14            CHANGE FROM:
              CHANGE TO:
15    REASON:
16            CHANGE FROM:
              CHANGE TO:
17    REASON:
18            CHANGE FROM:
              CHANGE TO:
19    REASON:
20            CHANGE FROM:
              CHANGE TO:
21    REASON:
22
                          CHRISTOPHER d'ARNAUD-TAYLOR
23
      Subscribed and sworn to before me
24    this      day of            , 2006.
25
```